IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:14-CR-426-1 |
| | ) | |
| KENNETH LAMONT REAMS, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION & ORDER**

Catherine C. Eagles, District Judge.

The defendant-inmate, Kenneth Reams, has filed a renewed motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and asks the Court to reduce his sentence. Mr. Reams seeks a time-served sentence based on COVID-19, the fact that he would have a much lower advisory guideline range if convicted today, the length of time he has already been in custody, and his rehabilitation. Because the sentencing factors do not support a time-served sentence reduction, Mr. Reams' motion will be denied.

### I. Procedural History

In February 2015, Mr. Reams pled guilty to one count of conspiracy to distribute cocaine base. Doc. 18; Minute Entry 02/06/2015. The Court sentenced Mr. Reams to 132 months imprisonment followed by three years of supervised release. Doc. 33 at 2–3.

In June 2020, Mr. Reams filed a motion for compassionate release, Doc. 97, which was denied without prejudice for lack of evidence to support his request for relief. Doc. 98. Mr. Reams filed a renewed motion for compassionate release in July 2020 based on the pandemic. Doc. 102; *see also* Doc. 104. The Court denied the motion because Mr.

Reams' medical conditions were well-controlled and the § 3553(a) factors did not support release. Doc. 105.

In March 2022, Mr. Reams filed this renewed motion for compassionate release. Doc. 121. In light of new and more substantial arguments Mr. Reams raised about sentencing law changes, the Court appointed counsel and directed the government to respond if it objected. Doc. 123. Briefing is now complete.

## II. Crime of Conviction and Sentencing of Mr. Reams and his Co-Defendant

Between March and June 2014, Mr. Reams, along with a co-defendant, made several street-level sales of cocaine base and heroin to a confidential informant. Doc. 31 at ¶¶ 4–7.[1] Mr. Reams sold approximately four grams of cocaine base and an unknown quantity of heroin. *Id.* Mr. Reams was 41 years old when he committed the offenses, *Id.* at 2, and was on probation when he made some of the sales. *Id.* at ¶ 47.

In November 2014, Mr. Reams was indicted and charged with one count of conspiracy to distribute cocaine base and two counts of distribution of cocaine base. Doc. 1. In February 2015, Mr. Reams pled guilty to one count of conspiracy to distribute cocaine base, with a plea agreement calling for dismissal of the distribution counts. Doc. 18; Minute Entry 02/06/2015.

At sentencing, the Court found the base offense level was 14. Doc. 31 at ¶ 13. Under the law at the time, a 21 U.S.C. § 846 drug conspiracy was treated as a controlled substance offense under the Sentencing Guidelines, and Mr. Reams qualified for the

---

[1] The Court adopted the presentence investigation report without change, Doc. 34, including the guideline calculations. Doc. 56 at 3.

career offender sentencing enhancement, which raised his offense level to 32. *Id.* at ¶ 19. After accounting for acceptance of responsibility, Mr. Reams' total offense level was 29. *Id.* at ¶¶ 20–22. Even without career offender status, Mr. Reams' criminal history score was 21, almost twice that required for a criminal history category of VI. *Id.* at ¶ 50. Based on Mr. Reams' total offense level of 29 and criminal history category of VI, his sentencing guideline range was 151 to 188 months. *Id.* at 25.

The Court sentenced Mr. Reams to 132 months and three years of supervised release, varying below the guideline range. Doc. 33. The Court explained that a downward variance was appropriate because of the small amount of drugs and in order to avoid unwarranted sentencing disparities between Mr. Reams and his co-defendant. Doc. 34 at 3. The Court acknowledged that the co-defendant's guideline range was much lower, but it was not willing to vary substantially below the guideline range because of Mr. Reams' "terrible record." Doc. 56 at 12.

Mr. Reams' co-defendant, Walter Thorne-Price, received a 34-month sentence. Doc. 35 (14-CR-426-2). Based on his total offense level of 12 and criminal history category of VI, Mr. Thorne-Price's guideline range was 30 to 37 months. Doc. 30 at 27 (14-CR-426-2). Supervised release began in April 2017. Doc. 74 at 1 (14-CR-426-2).

### III. Intervening Changes in Law and Impact on Guideline Range

As noted *supra*, Mr. Reams was convicted of one count of conspiracy to distribute cocaine base, 21 U.S.C. § 846, and sentenced as a career offender under U.S.S.G. § 4B1.1. Some five years after Mr. Reams was sentenced, the Fourth Circuit decided *United States v. Norman*, holding that conspiracy to distribute a controlled substance, 21

3

U.S.C. § 846, is not categorically a controlled substance offense under the Sentencing Guidelines and it does not trigger application of the career offender sentencing enhancement. 935 F.3d 232, 237–39 (4th Cir. 2019).

Mr. Reams, the Probation Office, and the government agree that under *Norman,* Mr. Reams would not receive the career offender enhancement per U.S.S.G. § 4B1.1 if he pled guilty to the same crime and were sentenced today. Doc. 121-2 at 2; Doc. 122 at 1; Doc. 125 at 6. Without the career offender enhancement, Mr. Reams' guideline range would be lower. Based on a total offense level of 12 without the enhancement, Mr. Reams' guideline range would be 30 to 37 months rather than 151 to 188 months. Doc. 122 at 3.

## IV. Other Relevant Facts

Mr. Reams is 49 years old. Doc. 31 at 2. He has been in custody since December 2014, *id.* at 1, and has served roughly 70% of his sentence. Doc. 125 at 4. Mr. Reams is housed at FCI Petersburg Low and at present is scheduled for release in February 2024. *See Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited July 14, 2022).

Mr. Reams has a long criminal history, *see* Doc. 31 at ¶¶ 25–47, with his first drug conviction in 1992. *Id.* at ¶ 27. He had many more drug-related convictions thereafter, many of which were misdemeanors. *Id.* at ¶¶ 29–30, 32–33, 37–38, 42, 46–47. His first firearm conviction was in 1993, *id.* at ¶ 28, and he had another a year later associated with drug trafficking. *Id.* at ¶ 30. He has several assault convictions, including one for

4

felony assault with a deadly weapon - serious injury, and two for felony habitual assault. *Id.* at ¶¶ 31, 38, 41, 44–45.

Mr. Reams is obese, Doc. 121-2 at 5, and has hypertension and high cholesterol, for which he is prescribed medication. Doc. 126 at 31–32. The CDC advises that persons with hypertension and obesity are at an increased risk of severe illness from COVID-19. *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 14, 2022).

Mr. Reams received the COVID-19 vaccine. Doc. 126 at 30. At FCI Petersburg Low, where Mr. Reams is housed, the BOP reports three inmates and one staff member are currently positive for COVID-19 and 192 inmates and 68 staff have recovered since the start of the pandemic. *See COVID-19 Cases*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited July 14, 2022). The FCI Petersburg facility reports that 2,462 inmates and 475 staff members are fully vaccinated. *See COVID-19 Vaccine Implementation*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited July 13, 2022).

Mr. Reams has had no disciplinary infractions while incarcerated. Doc. 122 at 4. He has completed 21 hours of educational courses in forklift classes and to receive his commercial driving license. *Id.* Throughout his incarceration Mr. Reams has worked, including as an orderly and at UNICOR. *Id.*

Mr. Reams has been addicted to drugs throughout his adult life. Doc. 31 at ¶¶ 68–71. At the time of his arrest, he was a regular user of cocaine and heroin. *Id.* at ¶ 69.

5

Mr. Reams has not completed any form of drug or mental health treatment during his current term of custody, which Mr. Reams requested at sentencing and the Court recommended. Doc. 56 at 11, 13. He reports that he is on the waiting list for the Non-Residential Drug Program and will attend Alcoholics Anonymous and Narcotics Anonymous meetings when conditions permit. Doc. 121-2 at 11.

If released, Mr. Reams plans to live with his mother and uncle in Durham. Doc. 122 at 3–4. The Probation Office visited their residence and found it suitable. *Id.* at 4. Mr. Reams reports that upon release he will have a job at Church's Chicken in Durham. Doc. 121-1 at 11.

## V.     Discussion

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences. *See United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial change of heart.") (cleaned up). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute expressly permits it to do so. *See* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A), often called the "compassionate release" provision, is one such statutory provision.

In order for a sentence reduction under § 3582(c)(1)(A) to be appropriate, the movant must satisfy the administrative exhaustion requirement, when invoked by the government. *See United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). Mr. Reams has made a facial showing of exhaustion, Doc. 121-2 at 2–3, and the government has not invoked the exhaustion requirement. *See* Doc. 125.

Section 3582(c)(1)(A) also requires that extraordinary and compelling reasons merit a reduction in sentence, that the reduction is consistent with any applicable policy statements issued by the Sentencing Commission, and that the relevant § 3553(a) sentencing factors do not counsel against early release.[2] *See United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020); *United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). The facts relevant to these requirements overlap a fair bit, *see United States v. Newell*, No. 13-CR-165-1, 2021 WL 3269650, at *6 n.28 (M.D.N.C. July 30, 2021), and "[d]ecisions about whether a particular defendant's sentencing factors support release are made in light of his specific extraordinary and compelling reasons, not separate from those reasons." *United States v. Beck*, No. 13-CR-186-5, 2021 WL 260402, at *4 (M.D.N.C. Jan. 26, 2021).

Based on an individualized analysis of a defendant's circumstances, an intervening change in sentencing laws is a relevant factor when determining whether extraordinary and compelling reasons warrant a sentence reduction. *See McCoy*, 981 F.3d at 285–86; *United States v. Crumitie*, No. 06-CR-271, 2022 WL 1809312, at *4 (M.D.N.C. June 2, 2022). This includes now-known-to-be-erroneous career offender enhancements, which in concert with factors such as risk from COVID-19, rehabilitation, length of sentence served, and a defendant's age at the time of the crimes, may constitute extraordinary and compelling circumstances justifying a sentence reduction. *See United States v. Cooper,*

---

[2] The Sentencing Commission has not yet adopted any policy statement applicable to motions filed directly by defendants. The Court considers the old policy statement applicable to motions brought by BOP as helpful but non-binding guidance. *See McCoy*, 981 F.3d at 282 n.7.

7

No. 10-CR-43, 2022 WL 1302708, at *2 (W.D. Va. May 2, 2022) (finding change in the law established by *Norman* to be extraordinary and compelling circumstances and citing cases); *United States v. Dilworth*, No. 04-CR-412, 2021 WL 861495, at *5–7 (M.D.N.C. Mar. 8, 2021); *United States v. Vaughn*, No. 08-CR-266, 2021 WL 136172, at *2–4 (S.D. W. Va. Jan. 13, 2021); *United States v. Elzey*, No. 09-CR-0288, 2022 WL 316717, at *3 (D. Md. Feb. 2, 2022).

Because of *Norman*, Mr. Reams would no longer be eligible for career offender status. If convicted of the same crime today, Mr. Reams' guideline range would be substantially different—as opposed to 151 to 188 months, it would be 30 to 37 months. Mr. Reams has served approximately 92 months, Doc. 125-1 at 3, well longer than the guideline sentence without the career offender enhancement.

But whether Mr. Reams would have received a sentence within that range is far from certain, and indeed highly unlikely. The guidelines then as now are non-binding, *see United States v. Booker*, 543 U.S. 220, 245 (2005), and the parties discussed the effect of the career offender enhancement on Mr. Reams' guidelines at the sentencing hearing. The Court examined all of Mr. Reams' relevant conduct and criminal history in determining an appropriate sentence. *See United States v. Jones*, 31 F.3d 1304, 1316 (4th Cir. 1994) ("The defendant need not be convicted of the charges constituting relevant conduct for him to still be held accountable for them."). The Court recognized at sentencing that Mr. Reams' co-defendant had a "substantially lower guideline range" and was more culpable, Doc. 56 at 3–4, 9, but still sentenced Mr. Reams to 132 months in view of all the relevant facts, specifically referencing that he had twice as many criminal

history points as required to reach criminal history VI. *Id.* at 12; Doc. 31 at ¶ 50 (criminal history score of 21). Had Mr. Reams not been a career offender, an upward variance was highly likely.[3]

The fact that Mr. Reams has already served a substantially longer sentence than his guidelines today would recommend is not the end of the inquiry. It does not account for the holistic analysis the Court undertook when imposing Mr. Reams' 132-month sentence. A change in sentencing law alone does not compel compassionate release. *See McCoy*, 981 F.3d at 286. The Court had legitimate reasons to impose a lengthy sentence and nothing about those reasons has changed.

Mr. Reams' health issues, which place him at a higher risk of severe complications from COVID-19, do not tip the scales towards a sentence reduction. As the Court has found, Doc. 105 at 3–4, and as still seems to be the case, Mr. Reams' high blood pressure and high cholesterol are well-controlled. Doc. 126 at 31–32. Mr. Reams is vaccinated against COVID-19. *Id.* at 30. While case numbers ebb and flow within prisons, current numbers are low. *See* FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited July 14, 2022) (showing three reported inmate cases and one reported staff case at FCI Petersburg Low). Mr. Reams would still be at risk from complications from COVID-19 if he were released, as community transmission is high.

---

[3] Probation recommended a sentence at the high end of the 151-to-188-month guideline range. Doc. 31 at 25.

9

Mr. Reams' conduct while incarcerated has been positive.[4] He has no disciplinary infractions and has maintained steady employment. Doc. 122 at 4. He has also completed 21 hours of vocational training. *Id.*

To an extent, changes in sentencing law, the length of sentence Mr. Reams has served, and his conduct while incarcerated might support a finding that extraordinary and compelling circumstances warrant a sentence reduction. But even assuming without deciding that extraordinary and compelling reasons support a reduction, the court in its discretion may deny a defendant's motion after balancing the applicable 18 U.S.C. § 3553(a) factors. *High*, 997 F.3d at 186. Here, a time-served sentence would not provide adequate deterrence, protect the public from further crimes of Mr. Reams, or give Mr. Reams needed correctional treatment. *See* § 3553(a).

Mr. Reams has a long and violent criminal history, Doc. 31 at ¶¶ 25–47, with many convictions for drugs and firearms, *id.* at ¶¶ 27, 28–30, 32–33, 37, 42, 46–47, multiple assault convictions, including one for Felony Assault with a Deadly Weapon – Serious Injury, and two convictions for felony habitual assault. *Id.* at ¶¶ 31, 38, 41, 44–45. Several times, over a long span of time, Mr. Reams struck victims with his fists and caused serious bodily harm. *Id.* at ¶¶ 31, 41, 44–45. As the Court observed when sentencing Mr. Reams, he has a "terrible record." Doc. 56 at 12.

Nothing has deterred Mr. Reams from stopping his criminal conduct. Contrary to most offenders, he continued committing crimes as he aged, and he was 41 years old

---

[4] Rehabilitation alone is not a basis for a sentence reduction. 28 U.S.C. § 994(t).

when he committed the crime of conviction. Doc. 31 at 2. Several periods of incarceration, including a sentence of five years for a previous federal drug crime, *id.* at ¶ 30, have had no deterrent effect. *Id.* at ¶¶ 29, 31, 38, 41, 44. Probation or post-release supervision have not worked either—Mr. Reams has repeatedly reoffended while under supervision. *Id.* at ¶¶ 27–28, 30–31, 47. He was on probation when he committed the crime of conviction. *Id.* at ¶ 47.

Mr. Reams has not completed any drug or mental health treatment during his current term of incarceration and he has not indicated he will seek treatment upon release. As Mr. Reams' counsel acknowledged at sentencing, and as is apparent from his record, Mr. Reams' criminal behavior has been motivated, at least in part, by long-standing addiction. Doc. 56 at 4–5. For years he has sold illegal drugs to support his own drug habit. *See id.* at 11; Doc. 31 at ¶¶ 68–71. Mr. Reams requested that the Court recommend intensive drug and mental health treatment while Mr. Reams was in the BOP, Doc. 56 at 5, 11, and the Court did so. *Id.* at 13. Mr. Reams has not yet taken advantage of any substance abuse or mental health treatment programs in custody, even something as basic as a twelve-step program. The Court realizes that programming has been limited during the pandemic and it is a positive that Mr. Reams reports he is on a waiting list for a Non-Residential Drug Program. Doc. 121-2 at 11. Given his history and absent any treatment, however, there is a high risk that Mr. Reams will return to drug use and criminal conduct unless he receives and accepts treatment during his time in custody.

The Court appreciates that Mr. Reams has already served around 92 months for selling 4 grams of cocaine base and that he did not use firearms during any drug

11

transaction. He was selling small amounts to support his drug habit. He has had no infractions in prison and has a good release plan approved by the Probation Office. Doc. 122 at 3–4.

But based on Mr. Reams' criminal history and his lack of rehabilitative treatment directed at his drug addiction and his mental health, the § 3553(a) factors do not support immediate release. When sentencing Mr. Reams, the Court took into account the small amount of drugs and sentencing disparities with his co-defendant, and the sentence imposed was lower than the career-offender guidelines suggested. At the same time, the Court made clear that it considered a lengthy sentence appropriate based on Mr. Reams' terrible criminal record, which is full of drug crimes and violent assaults. The Court is not persuaded that a sentence reduction would adequately protect the public.

## VI. Conclusion

The compassionate release statute is appropriately invoked only in unusual cases or, as the Fourth Circuit put in in *McCoy*, the "most grievous cases." 981 F.3d at 287. It should not become a vehicle for wholesale and repeated reconsideration of sentences in violation of the general rule of finality. *See Goodwyn*, 596 F.3d at 235. While changes in sentencing law mean Mr. Reams would have a different guideline range today, sentencing decisions, including those under the compassionate release statute, require courts to individually assess each defendant. Because Mr. Reams has a long and violent criminal history and has not provided sufficient evidence of rehabilitation, the § 3553(a) factors do not support release. His motion will be denied.

It is **ORDERED** that the defendant's motion for compassionate release, Doc. 121, is **DENIED**.

This the 20th day of July, 2022.

_____
UNITED STATES DISTRICT JUDGE